**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FARKHAN MAHMOOD SHAH,

    *Plaintiff*,

v.

AMERICAN AIRLINES, INC.,
ASSOCIATION OF PROFESSIONAL FLIGHT
ATTENDANTS., KEITH REISEN, and JOHN
DOES 1-5,

    *Defendants*.

Civil Action No. 17-6298

**OPINION**

**Evelyn Padin, U.S.D.J.**

    In this case, Plaintiff Farkhan Mahmood Shah ("Shah") alleges that his former employer, Defendant American Airlines, Inc. ("American"), created a hostile work environment as well as discriminated and retaliated against him because of his religion and national origin, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1. *See* Am. Compl., D.E. 98. Currently pending before the Court is American's motion for summary judgment, brought pursuant to Federal Rule of Civil Procedure 56. D.E. 114. Shah, through his counsel of record, opposes the motion. D.E.s 122-129. Shah has also submitted a plethora of *pro se* filings, further detailed *infra*, that touch on issues which are germane to the pending motion. The Court has reviewed all submissions in support and in opposition, and considered the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, American's motion for summary judgment is granted.

I. **BACKGROUND**

    A. Shah's Legal Representation

As an initial matter, the Court must address the demonstrably fractured relationship between Shah and his present counsel of record, Ballon Stall, P.C. This issue appears to have been first formally raised to the Court on July 21, 2021, when counsel submitted a letter requesting permission to file a motion to be relieved.[1] D.E. 118. Shah's counsel withdrew that application on or about July 30, 2021. *See* Dec. 6, 2021 Order, D.E. 168 at 2. Counsel thereafter renewed its request to be relieved via the filing of a formal motion on October 8, 2021. D.E. 152.

On December 6, 2021, United States Magistrate Judge Michael A. Hammer, in a well-reasoned 5-page decision, denied counsel's request to be relieved pending the Court's resolution of the current summary judgment motion. D.E. 168. In so doing, His Honor expressly noted that Shah's "counsel [has] opposed [American's] motion . . . through the submission of a comprehensive brief, statement of materials facts in opposition, declarations, and exhibits." *See id.* at 2 (*citing* D.E.s 122-129). On June 29, 2022, United States District Judge Julien X. Neals, in response to Shah's *pro se* appeal of Judge Hammer's denial, *see* D.E. 169, entered an Opinion and Order affirming Judge Hammer's decision. D.E.s 189, 190. Thus, as it stands, Shah is currently represented by counsel in this matter.

Nevertheless, Shah has, since July 21, 2021, submitted, by the undersigned's count, at least 40 separate *pro se* filings to the Court that air a range of grievances, issues, and concerns related to, *inter alia*, the manner in which this matter is proceeding. *See* D.E.s 137, 139, 141-143, 146-148, 150, 156, 159-167, 169, 171-173, 177-179, 181-188, 193, 197-200, and 203. These filings

---

[1] Shah's counsel was, at that time, in the midst of preparing its opposition to American's summary judgment motion, which it filed shortly thereafter, on July 23, 24, and 26, 2021. *See* D.E.s 122-129.

have been afforded due consideration by the Court. For purposes of resolving the present motion, it bears noting only that the substantive information presented in Shah's filings does not change the nature of the underlying undisputed facts that are material to the Court's summary judgment analysis, nor do any of these submissions present additional facts which otherwise bear on the Court's resolution of American's motion, which, again, requests summary judgment on Shah's NJLAD claims. *Accord Bell v. City of Philadelphia*, 275 F. App'x 157, 160 (3d Cir. 2008) (a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). The Court now directs its attention to the facts of record and other considerations which are relevant to that motion.

B. Shah's Discrimination Claims

Shah, who is a Muslim male of Pakistani descent, alleges that he was subject to various acts of unlawful discrimination, detailed *infra*, while employed as a flight attendant at American. Shah began his career there in October of 1999. Shah avers that he "enjoyed a successful and peaceful career with American until the tragic attacks of September 11, 2001 [and that i]mmediately following those attacks Shah was subject to persistent harassment from fellow American employees . . . [which] . . . continued until Shah was terminated on or about June 9, 2020." *See* Pl.'s Br. in Opp. to Mot. for Summ. J., D.E. 127 at 1-2.

Shah, via his opposition brief, claims that the following occurrences[2] preclude the entry of summary judgment on his NJLAD claims:

---

[2] The Court, unless otherwise indicated, assumes these claims as true for purposes of resolving the present motion.

3

In 2012, Shah reported the harassment and discrimination he was experiencing to his then-supervisor, Kathleen Gaffoor, and requested her assistance. *Id.* at 2. Gaffoor, in response, became angry and shouted that discrimination did not exist at American. *Id.*

In 2013, Shah noticed erroneous notations in his timeliness and attendance records. Shah's supervisor in 2013, Felicia Lake, offered to remove Shah's numerous incorrect attendance reports, but she never did. *Id.* at 3. Lake did, however, make those changes to other flight attendants' records, thereby expunging their late reports and missed flights.[3] *Id.*.

In or around September 2013, Shah filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 4. The EEOC dismissed that complaint on January 13, 2014. *See* D.E. 114-27.

In October 2014, FBI Agent Paul Landstrom appeared at Shah's New Jersey home and questioned Shah about an innocuous conversation Shah had with other American employees about the September 11, 2001 attacks. D.E. 127 at 5. In October 2016, Agent Landstrom again appeared at Shah's home and asked him about propane that Shah purchased and later returned. *Id*. at 5-6.

In or around October 2015, when Shah was working out of American's Miami flight attendant base, the parking pass which he used to park his car at Newark Airport was revoked. *Id*. at 7. American Flight Service Manager Judy Williams advised Shah that he was required to pay for the pass, notwithstanding that American flight attendants are entitled to free parking at Newark Airport and notwithstanding that other flight attendants were not required to pay to park there. *Id.*

---

[3] On April 11, 2014, Shah filed a lawsuit, *pro se*, in the United States District Court for the District of New Jersey in which he asserted claims against various American employees for, *inter alia*, racial discrimination, in violation of Title VII of the Civil Rights Act of 1964. *See* D.E. 114-29. That pleading references both the 2012 incident involving Gaffoor and the 2013 incident involving Lake. Shah's 2014 discrimination lawsuit was dismissed on December 15, 2014 pursuant to Federal Rule of Civil Procedure 4(m). *See* D.E. 114-30.

4

Shah's request that the interfaith area at Miami Airport be opened 24 hours a day so that he could pray there was denied. *Id*.

On May 9, 2016, Shah was designated as a security risk during a flight from London's Heathrow Airport to New York's JFK Airport. *Id*. at 4. Shah avers that there were also several other, undated occasions on which he was designated as a flight risk via a "quadruple S" designation on his boarding pass. *Id*.

On October 1, 2016, Shah filed a complaint with the EEOC and notified American of the complaint. *Id*. The EEOC terminated its investigation into Shah's 2016 complaint and issued a Notice of Right to Sue letter on January 9, 2017. *See* D.E. 114-28.

On the same day Shah filed his 2016 EEOC complaint, American denied him entry to a flight through the Known Crew Member area. D.E. 127 at 4. The record evidence indicates that the suspension of Shah's Known Crew Member ("KCM") privileges on October 1, 2016 was the result of an August 24, 2016 letter directive from the Transportation Security Administration ("TSA"). *See* D.E. 114-24.

In or around October 2016, Shah's request for a makeup flight was denied and the flight was given to a less senior flight attendant, in violation of American's own policies. D.E. 127 at 5.

And on December 26, 2018, Shah was improperly assigned a missed trip for a flight. *Id*. at 3. Shah also vaguely alludes to other occasions where American may have found that he improperly missed flights. *See*, *e.g.*, *id.* at 3.

    C. <u>Additional Undisputed Facts Considered by the Court</u>

The following undisputed factual considerations also bear on the Court's analysis:

Shah, over the course of his employment with American, was based at flight attendant bases in Philadelphia (April 2019 to June 2020); Dallas/Fort Worth (August 2015 to September

2015); Miami (at various times from May 2014 to September 2016 and from January 2018 to March 2019); and New York (from October 1999 to April 2014 and at various times from 2015 to 2018).  Def.'s L. Civ. R. 56.1 Statement of Material Facts Not in Dispute, D.E. 114-2 at ¶ 5. American does not have any such "New Jersey" flight attendant base.  *Id.* at ¶ 6.  The fact that American's collective bargaining agreement ("CBA") refers to Newark Airport as one of three "co-terminals" (along with JFK and LaGuardia) for the New York flight attendant base, *see* D.E. 126-11 at § 17, is immaterial to this consideration.  To be clear, "co-terminals" are a scheduling and transportation concept only, *see id.*; and American's reference to that concept within its CBA does not alter the undisputed fact that the American flight attendant base which services flights out of Newark Airport is, and always has been, located in New York.

Moreover, while it is undisputed that flight attendants from the New York base, including Shah, were sometimes obligated to fly out of Newark, New Jersey, Shah himself testified that he was never personally based out of Newark.  *See* DE 126-1 at 34:11-19 ("Q. So at any time during your employment with American, have you been based in Newark? A. No, I've been based in either JFK or LaGuardia, but Newark was one of the airports I was obligated to fly."); *id.* at 267:23 ("I've never been based in Newark.  It's always been New York base where you have to fly out of the three airports."); *accord id.* at 31:13-24.

The Association of Professional Flight Attendants ("APFA") is the certified union that represents flight attendants at American, including Shah.  D.E. 114-2 at ¶ 8.  During his career at American, the terms and conditions of Shah's employment were set forth in a CBA between APFA and American.  *Id.* at ¶ 9.  The CBA establishes an administrative framework to resolve all disputes that require interpretation or application of the CBA, including any claim alleging that American violated the terms and conditions of employment set forth in the CBA.  *Id.* at ¶ 11.  On numerous

occasions, Shah alleged to APFA that American violated the CBA, or had otherwise mistreated him. *Id*. at ¶ 12. For example, Shah testified that he raised a parking pass complaint with APFA regarding his attempts to park his car at Newark Airport. *See id*. He also went to APFA with complaints regarding the mandatory reporting time for flights, as well as the scheduling procedures and sick time policies for flight attendants. *Id*. at ¶ 12. APFA never filed any CBA grievance on Shah's behalf at any point prior to June 9, 2020, when American terminated Shah's employment. *Id*. at ¶ 13.

The record shows that the following occurrences preceded American's termination of Shah:

On February 17, 2020, Shah emailed his then-manager at the Philadelphia flight attendant base stating that he had been "on vacation overseas," and that this was the reason that FedEx had been unsuccessful in delivering Shah a new flight attendant uniform. *Id*. at ¶ 42.

During the time period when FedEx was unable to deliver Shah his new uniform, Shah was working as a reserve flight attendant. *Id*. Reserve flight attendants are assigned calendar days during the month where they are on-call for flying duty. *Id*. at ¶ 40. On assigned calendar days, reserves have specific Reserve Availability Periods ("RAPs") where they must be able to report to their base airport (in Shah's case, the Philadelphia airport) within two hours or less. *Id*. at ¶ 41. American pays reserve flight attendants for being on-call, *i.e.*, they receive pay and credit for RAPs, regardless of whether American actually calls them to work a flight. *Id*. In the months preceding his February 17, 2020 email, Shah had bid for and received "reserve status," which means he was being paid to complete his assigned RAPs. *Id*. at ¶ 43.

Shah's February 17th email informing American that he had been "on vacation overseas" on the days that FedEx had unsuccessfully attempted to deliver Shah his new uniform thus revealed

7

that Shah was out of the country while he was on reserve status, *i.e.*, when he was supposed to be within two hours of the Philadelphia airport and available to report for duty within two hours, if needed. *Id*. at ¶ 42. American investigated further, including a review of Shah's use of American's employee travel privileges. *Id*. at ¶ 44. These travel records showed that in 2019, Shah was away from Philadelphia (in San Diego once and Pakistan twice) on days where he had been assigned and paid as a reserve flight attendant. *Id*. at ¶ 45. Shah, for his part, admits that this was the case. *See* D.E. 127 at 9-11.

On June 9, 2020, American sent a letter to Shah informing him of his termination for this reason. D.E. 114-2 at ¶ 47; *see also* D.E. 114-33. The June 9th termination letter stated that Shah "intentionally placed [himself] out of position for reserve duty on multiple occasions in 2019, [and] thus accept[ed] pay and credit for work that [Shah] did not perform and had no intent to perform," in violation of American's Rules of Conduct, and that this was the reason he was being terminated. D.E. 114-33. Since October 2018, American has terminated at least 14 other flight attendants for this reason. D.E. 114-2 at ¶ 48.

    D.  Procedural History

Shah, who is a New Jersey resident, initiated this lawsuit via the filing of a complaint in New Jersey state court on or about April 6, 2017. Pl.'s Apr. 6, 2017 Compl., D.E. 1-1. Shah's 2017 complaint alleged various claims against: (1) American, including several under the NJLAD; and (2) his union, APFA. *Id*. On August 9, 2017, the Honorable James F. Hyland of the New Jersey Superior Court dismissed, with prejudice: (1) all of Shah's claims against APFA, D.E. 1-2; and (2) all of Shah's non-NJLAD-based claims against American, *i.e.*, breach of the covenant of good faith and fair dealing and violation of the New Jersey Civil Rights Act. D.E. 1-3. On August 21, 2017, American, a Delaware corporation whose principal place of business is in Texas, and

who is the lone-remaining defendant in this lawsuit following APFA's dismissal, removed this matter to the District of New Jersey on the basis of diversity jurisdiction. D.E. 1.

On September 14, 2020, Shah amended his pleading to reflect the fact that he had been formally terminated by American on June 9, 2020. D.E. 98. Notably, Shah's Amended Complaint asserts causes of action against American under the NJLAD, and that statute alone. *Id.* More specifically, Shah asserts that he was subject to unlawful discrimination based on his religion (Muslim) and his national origin (Pakistan), that he was forced to work in a hostile work environment, and that he was retaliated against, and ultimately terminated, because he complained about the acts of unlawful discrimination and harassment inflicted upon him. *Id.*

On May 28, 2021, American filed its motion for summary judgment. D.E. 114. On July 23 and 24, 2021, Shah – through his counsel – filed opposition to that motion. D.E.s 122-126.[4] On August 30, 2021, American filed its reply. D.E. 140.

## II. LEGAL STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving

---

[4] Certain of those filings were re-submitted, per the direction of the Clerk, on July 26, 2021. D.E.s 127-129.

party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)).  In other words, a court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).  To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party.  *Anderson*, 477 U.S. at 250.  "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322.  "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate.  *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

As noted, Shah asserts that he was subject to unlawful discrimination based on his religion and his national origin, that he was forced to work in a hostile work environment, and that he was retaliated against, and ultimately terminated, because he complained about the acts of unlawful discrimination and harassment inflicted upon him, in violation of the NJLAD. American argues that it is entitled to summary judgment because New Jersey was never Shah's "place of employment," and thus, the NJLAD is inapplicable to all of Shah's discrimination claims. D.E. 114-1 at 17-19. American further asserts that even if the NJLAD did apply, summary judgment on all such claims would still be appropriate for "additional reasons." D.E. 114-1 at 19. The Court agrees on both points.

#### A. The Court's "Place of Employment" Analysis

"New Jersey courts have consistently applied the law of the state of employment to claims of workplace discrimination, and therefore only apply the NJLAD if the claimant was employed in New Jersey." *Peikin v. Kimmel & Silverman, P.C.*, 576 F. Supp. 2d 654, 657 (D.N.J. 2008) (quoting *Weinberg v. Interep Corp.*, No. 05-5458, 2006 WL 1096908, at *6 (D.N.J. Apr. 26, 2006); *Lee v. United Airlines, Inc.*, Civil Action No. 18-14772, 2021 WL 2679891, at *4 (D.N.J. June 29, 2021) ("In determining whether a plaintiff can pursue claims under [the NJLAD], the key question is the situs of that individual's employment."); *accord Satz v. Taipina*, 2003 WL 22207205, at *18 (D.N.J.2003) (plaintiff could not assert a claim under the NJLAD where defendants had offices in New Jersey, but plaintiff worked exclusively in Pennsylvania and Delaware); *Brunner v. AlliedSignal, Inc.*, 198 F.R.D. 612, 613–14 (D.N.J.2001) (the NJLAD does not apply to claims brought by a New Jersey resident against a New Jersey company when claimant was employed exclusively in Pennsylvania); *Buccilli v. Timby, Brown & Timby*, 283 N.J. Super 6, 10-11 (App.

Div. 1995) (a New Jersey resident, employed in Pennsylvania, could not assert a claim under the NJLAD against a law firm even though it had offices in New Jersey).

New Jersey is an individual's place of employment if New Jersey has "a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Satz v. Taipina*, No. 01-5921, 2003 WL 22207205, at *15 (D.N.J. Apr. 15, 2003) (quoting *Blakey v. Cont'l Airlines, Inc.*, 164 N.J. 38, 65 (2000)). In that respect, "[m]ere, occasional contact with New Jersey as part of a plaintiff's employment is insufficient to turn those visits into plaintiff being based in New Jersey for employment purposes." *Lee*, 2021 WL 2679891, at *4 (quoting *Schneider v. Sumitomo Corp. of Am.*, No. 09-5094, 2010 WL 2521774, at *2 (D.N.J. June 14, 2010). In other words, "it is where Plaintiff worked, rather than where Defendant was located or where Plaintiff occasionally traveled to for business, that is significant." *Mirabella v. Oasis Foods Co.*, No. 12-6218, 2014 WL 7272955, at *4 (D.N.J. Dec. 16, 2014).

Here, the undisputed facts of record indicate that Shah's employment with American was never based in New Jersey. As noted, Shah, during his time with American, instead worked out of flight attendant bases in Philadelphia, Dallas/Fort Worth, Miami, and New York. DE 114-2 at ¶ 5. Indeed, Shah himself testified that he was never personally based out of Newark. *See* DE 126-1 at 34:11-19 ("Q. So at any time during your employment with American, have you been based in Newark? A. No, I've been based in either JFK or LaGuardia, but Newark was one of the airports I was obligated to fly."); *id.* at 267:23 ("I've never been based in Newark. It's always been the New York base where you have to fly out of the three airports."); *accord id.* at 31:13-24.

And while the Court recognizes that flight attendants from the New York base, including Shah, sometimes flew out of Newark, New Jersey, Shah himself fails to meaningfully demonstrate

12

that his connections to New Jersey were anything other than extremely limited insofar as it relates to Shah's employment duties at American. Shah does not, for example, quantify how many times he served as a flight attendant on planes that flew in or out of Newark Airport. He likewise fails to point to any colorable instances of alleged misconduct which occurred while he was working in New Jersey, specifically. Indeed, it appears that the only New Jersey-based, American-specific incident specifically cited by Shah in support of his NJLAD claims involves American's purportedly improper suspension of his parking privileges at Newark Airport, which, notably, occurred during a period when Shah was working out of the Miami flight attendant base. Nor is there anything else in the record, based on the undersigned's independent review, which suggests that Shah's New Jersey-specific employment responsibilities were significant, or that his work in New Jersey was anything other than occasional, at best.

Instead of addressing this glaring factual discrepancy, Shah simply avers that summary judgment is inappropriate because he was intermittently based out of American's New York flight attendant base, and that base includes Newark Airport. *See* D.E. 127 at 14-16. But that assertion, standing alone is insufficient to defeat summary judgment. *See McGovern v. Southwest Airlines*, Civil Action No. 12-3579 (JBS/KMW), 2013 WL 135128, at *2 (D.N.J. Jan. 8, 2013) ("Essentially, there are no cases applying the NJLAD to out-of-state employers unless the Plaintiff has significant employment responsibilities in New Jersey"); *accord Lee*, 2021 WL 2679891, at *5 ("the mere fact that Plaintiff performed occasional work in New Jersey—a maximum of ten workdays per month—among other places does not constitute significant enough contacts with New Jersey for it to be considered her place of employment."); *Weinberg v. Interep Corp.*, Civ. No. 05-5458 (JBS), 2006 WL 106909, at *6 (D.N.J. Apr. 26, 2006) (plaintiff who was employed in Pennsylvania but conducted five percent of his sales in New Jersey could not assert NJLAD

claims because those sales were not a substantial fraction of his business and did not "transform his place of employment from Pennsylvania to his customers' locations in New Jersey.").

In short, the facts of record fail to suggest that New Jersey was ever Plaintiff's "place of employment" while working for American, and likewise fail to, in any other way, suggest that Shah's employment-specific connections to New Jersey are somehow significant enough to otherwise sustain his NJLAD claims. The Court will accordingly grant American's motion for summary judgment and dismiss all of Plaintiff's NJLAD claims.

### B. Additional Considerations Which Support Summary Judgment

Even assuming, *arguendo*, that Shah demonstrated that New Jersey was his place of employment for purposes of asserting a viable NJLAD claim – and he has not – the Court would still grant summary judgment for the reasons that follow:

There are four separate NJLAD claims asserted in Shah's Amended Complaint. In Counts One, Two, and Three, Shah asserts claims of, respectively, discrimination, retaliation, and retaliatory discharge. D.E. 98 at 19-21. All three of these claims "are controlled by the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841-42 (3d Cir. 2016); *accord Viscik v. Fowler Equip. Co.*, 173 N.J. 1 (2002). Under the *McDonnell Douglas* burden-shifting framework, (1) "the plaintiff first [must] establish a *prima facie* case of discrimination or retaliation"; (2) if the plaintiff does so, "the burden then shifts to the employer to articulate a legitimate, nonretaliatory or nondiscriminatory reason for its actions"; and (3) if the employer does so, "the burden then shifts back to the plaintiff to prove that the employer's nonretaliatory or nondiscriminatory explanation is merely a pretext for the discrimination or retaliation."

*Tourtellotte*, 636 F. App'x at 841 (citing *McDonnell Douglas Corp.*, 411 U.S. at 802-04). Counts One, Two, and Three all fail under this standard.

As to Shah's discrimination claim, the NJLAD makes it unlawful "[f]or an employer, because of[, *inter alia*,] the race, creed, color, national origin, ancestry . . . of any individual . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.J.S.A. § 10:5-12(a). "Typically, a *prima facie* case of unlawful discrimination in the workplace under the NJLAD is established when a plaintiff demonstrates, by a preponderance of the evidence, that he or she (1) belongs to a protected class; (2) was performing a job at a level that met the employer's legitimate expectations; (3) suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment actions." *Wesley v. Palace Rehabilitation & Care Center, L.L.C.*, 3 F. Supp. 3d 221, 231 (D.N.J. 2014) (citing *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 867 A.2d 1133 (2005)).

Here, it is undisputed that Shah was terminated by American on April 9, 2020,[5] and that the reason proffered by American for this termination was that Shah, on three separate occasions in 2019, accepted pay and credit for reserve duty while being out of position, *i.e.*, more than two hours away from the airport. Shah does not challenge that American's finding is accurate. Nor can he meaningfully dispute that by being out of position, he did not perform his job at a level that met American's expectations. The record likewise shows that since 2018, at least 14 other American employees have been terminated for this reason. Shah, moreover, has not provided any colorable basis for the Court to conclude that the reason given by American for its termination of him, *i.e.*, for being out of position while on reserve duty basis, is pretextual. These considerations

---

[5] The Court finds, on the record before it, that American's termination of Shah, and that act alone, is the only incident that constitutes an NJLAD-actionable "adverse employment action."

further support the entry of summary judgment on Shah's NJLAD discrimination claim. *See Thomas v. United Parcel Services, Inc.*, Civil Action No. 16-269, 2019 WL 3798487, at *7 (D.N.J. Aug. 12, 2019) (granting summary judgment on plaintiff's NJLAD racial discrimination claim where the plaintiff "fail[ed] to make a sufficient showing that he was performing his job at a level that met his employer's expectations.").

The Court now turns to Shah's retaliation claims, at Counts Two and Three. To state a *prima facie* case for retaliation and/or for retaliatory discharge under the NJLAD, a "plaintiff must show that 1) [he or] she was engaged in a protected activity known to defendant; 2) [he or] she was thereafter subjected to an adverse employment decision by the defendant; and 3) there was a causal link between the two." *Royster v. New Jersey State Police*, 439 N.J. Super. 554, 575 (App. Div. 2015) (quoting *Woods-Pirozzi v. Nabisco Foods*, 290 N.J. Super. 252, 274 (App. Div. 1996)), *aff'd as modified*, 227 N.J. 482 (2017); *accord Rogers v. Alternative Resources Corp.*, 440 F. Supp. 2d 366, 376 (D.N.J. 2006) (setting forth essentially the same standard with respect to a *prima facie* retaliatory discharge claim).

Here, the undisputed facts fail to demonstrate a causal link between Shah's complaints of harassment/discrimination and American's decision to terminate Shah. Instead, as explained above, the facts of record show that American's termination of Shah occurred because he admittedly accepted pay and credit for three separate RAPs in 2019 while being out of position. Shah has not presented any evidence which plausibly suggests that his employer's nonretaliatory/ nondiscriminatory explanation is merely a pretext. Any such causal link is also undermined by the fact that at the time of his termination in 2020, Shah had already filed an EEOC complaint in 2013, a *pro se* federal lawsuit in 2014, a second EEOC complaint in 2016, and that his current lawsuit had been pending for over three years. These additional considerations further support the

Court's granting of summary judgment on Shah's NJLAD retaliation and retaliatory discharge claims. *See Thomas*, 2019 WL 3798487, at *7 (granting summary judgment on plaintiff's NJLAD retaliation claim where "the undisputed facts [did] not demonstrate a causal link between Plaintiff's complaints of harassment/discrimination and Defendants' conduct of discipline/termination."); *MacClean v. Stuart Weitzman Shoes*, 863 F. Supp. 2d 387 (D.N.J. 2012) (granting summary judgment on plaintiff's NJLAD retaliatory discharge claim where the record was clear that the termination was the result of plaintiff's violations of company policy).

In Count Four of his Amended Complaint, Shah asserts an NJLAD hostile work environment claim. "To establish a *prima facie* claim for hostile work environment under the NJLAD, a plaintiff must establish that defendant's conduct '(1) would not have occurred but for the employee's [protected characteristic]; and it was (2) severe or pervasive enough to make a (3) reasonable [person] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.'" *Ross v. Rutgers Univ.*, No. 13-2809, 2013 WL 5201227, *3 n. 2 (D.N.J. Sept. 16, 2013) (quoting *Lehman v. Toys R Us, Inc.*, 132 N.J. 587, 603-04 (1993)) (alterations in original); *see also McKinnon v. Gonzales*, 642 F. Supp. 2d 410, 421 (D.N.J. 2009) (the "*sine qua non* of a hostile work environment claim is a 'workplace . . . permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

Here, the record is devoid of any evidence which indicates that Shah was employed in a workplace permeated with discriminatory intimidation, ridicule, and insult, much less one that was sufficiently severe such that it altered Shah's conditions of employment to create an abusive working environment. And Shah's hostile work environment claim therefore also fails for this

additional reason.  *See Ali v. Woodbridge Township School District*, 957 F.3d 174, 182 (3d Cir. 2020) (affirming award of summary judgment on plaintiff's NJLAD hostile work environment claim notwithstanding the occurrence of isolated incidents in which a supervisor greeted plaintiff by uttering offensive remarks about Muslims and Egyptians because those remarks did not "rise to the level of severity that would alter working conditions" and were not "so pervasive that they altered the working environment").

Finally, it bears emphasizing that many of the acts complained of by Shah occurred well before April 6, 2015, *i.e.*, the date that is two years prior to when Shah initiated this lawsuit in New Jersey State Court.  All such acts are presumptively non-actionable as time-barred under the NJLAD's two-year statute of limitations.  *See Montells v. Haynes*, 133 N.J. 282, 286 (1993) (claims under the NJLAD are subject to a two-year statute of limitations); *Hanani v. N.J. Dep't of Envtl. Prot.*, 205 F. App'x 71, 76 (3d Cir. 2006) ("In employment discrimination actions, the limitations period begins with the 'time of the discriminatory act.'") (quoting *Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 842 (3d Cir. 1992) (alteration in original)).  Insomuch as Shah attempts to allege that any discrete acts which occurred before April 6, 2015 are, in and of themselves, independently actionable under the NJLAD, he is incorrect.  *See Amtrak v. Morgan*, 536 U.S. 101, 113-114 (2002) ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"); *Srgo v. Bloomberg L.P.*, 331 F. App'x 932, 938 (3d Cir. 2009) ("discrete acts . . . do not fall under the continuing violations doctrine and are subject to the NJLAD's two-year statute of limitations.").  The above additional considerations also support the Court's entry of summary judgment on all of Shah's NJLAD claims.

## IV.  CONCLUSION

For the foregoing reasons, American's motion for summary judgment, D.E. 114, is granted. Plaintiff's amended complaint is dismissed with prejudice and this case is closed.  An appropriate Order accompanies this Opinion.

Dated**:** August 4, 2022

s/ Evelyn Padin<br>
Evelyn Padin, U.S.D.J.